UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RICHARD C. SAUL, JR., <br><br> Plaintiff <br><br> v. <br><br> PRINCE MANUFACTURING CORPORATION <br><br> Defendant. | Civil Action No. 1:12-CV-270-JVB |

**OPINION AND ORDER**

After a late-night collision on a motorcycle, Plaintiff, Richard Saul, was treated for his severe injuries. A blood draw revealed that his blood alcohol content was 0.18. When he submitted the ensuing medical bills to his employer's insurance plan he was denied because the plan excluded coverage for "illegal acts." His subsequent attempts at appeal were unsuccessful even though the local prosecutor dropped all charges. He sued his employer pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). Plaintiff asks this Court to order Defendant to pay his medical bills.

Before this Court are the Parties' Cross-Motions for Summary Judgment. The Court grants Defendant's Motion and denies Plaintiff's Motion.

1

A. **FACTUAL BACKGROUND**

**(1)** *The Terms of the Health Plan*

Defendant, Prince Manufacturing Corporation, provides health benefits for full-time active employees through a self-funded employer group health plan (the Plan). (Admin. R., DE 24-2, at 50.) Claims are administered by a third party, Administration System Research Corporation International (Plan Administrator). (*Id*. at 52.) If a claim is denied, the claimant can appeal to the Plan Administrator within 180 days. (*Id*. at 122.) If the appeal is denied, the claimant has 60 days to initiate a second appeal to Defendant. (*Id*. at 123.) Only after all administrative remedies are exhausted can the claimant pursue litigation. (*Id*.)

The Plan specifically excludes coverage for medical care of injuries caused by "illegal acts." The clause prohibits coverage of,

> Charges incurred for an Illness or Injury resulting from or occurring during the commission of a violation of law by the Covered Person, including, but not limited to, the engaging in an illegal occupation or act, the commission of an assault or battery, or the operation of a Motor Vehicle while the Covered Person is under the influence of alcohol or illegal drugs, but excluding minor, non-criminal traffic violations and similar civil infractions.

(DE 24-2 at 83.)

The policy defines a Motor Vehicle as a "car or other vehicle . . . that has more than two wheels . . . [and] does not include a motorcycle." (*Id.* at 145.)

**(2)** *The Motorcycle Accident and Subsequent Treatment*

On August 7, 2010, Plaintiff struck a parked car while operating a motorcycle. (DE 24-2 at 186.) The responding officer found Plaintiff lying underneath the car with blood covering his head. The officer detected the smell of alcohol on him and requested a blood draw that revealed a blood alcohol level of 0.18, well above the legal limit of 0.08. (*Id.*); *see* Ind. Code 9-30-5-1(b).

Relying on the blood draw evidence, the local prosecutor charged Plaintiff with the crime of Operating While Intoxicated in violation of Ind. Code 9-30-5. (*Id.* at 207.) Plaintiff filed a motion to suppress the blood draw evidence because it was requested orally instead of in writing as required by Indiana law. (*Id.* at 200.) The court agreed with Plaintiff and the prosecutor dropped the charges after the evidence was suppressed. (*Id*. at 202.)

**(3)** *The Claims and Appeals*

Meanwhile Plaintiff sought treatment for his injuries. As he received care he submitted bills to the Plan Administrator for reimbursement. (DE 24-2 at 155–79.) All of his bills were denied by the Administrator citing the "illegal acts exclusion" of the policy. (*Id*.)

Plaintiff initiated his first appeal within the 180 day limit on October 27, 2010. He claimed that the exclusion did not apply because no court had found him guilty of any illegal acts. (*Id*. at 196.) The Administrator denied the appeal on November 22, 2010, relying on the blood draw evidence to conclude that Plaintiff had committed an illegal act. (*Id*. at 197.) The denial letter advised him that he had 60 days to file his next appeal.

Plaintiff waited over a year before filing his second appeal on December 8, 2011. He attached documents that showed that the prosecutor had dropped all charges. (*Id*. at 199.) Defendant denied the appeal on January 9, 2012 because it was not filed within the 60 day window. (*Id*. at 216–17.)

**B. LEGAL STANDARD**

**(1)** *Summary Judgment*

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these guidelines, the Court now turns to the legal standard of review.

**(2)** *Standard of Review*

Under ERISA guidelines, a court must review the decision of the Plan Administrator under an "arbitrary and capricious standard." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This standard requires a court to give "an administrator's interpretation . . . great deference" and avoid reversing the decision "if it is based on a reasonable interpretation of the plan's language." *Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009). This Court will uphold the Administrator's decision if:

> (1) it is possible to offer a reasoned explanation based on the evidence . . . (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)

**C. ANALYSIS**

The cross-motions for summary judgment raise two issues: (1) whether Plaintiff exhausted all administrative remedies before filing his lawsuit; (2) whether the Plan Administrator acted in an arbitrary and capricious manner in denying coverage of Plaintiff's medical bills.

4

**(1)** *Exhaustion of Administrative Remedies*

As a general rule, ERISA requires employees to exhaust administrative remedies before they file suit in federal court. *Edwards*, 639 F.3d at 360. A claimant who does not file a timely request for administrative review fails to meet this prerequisite. *Id.* at 362 (quoting *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000)).

The ultimate decision to require exhaustion of administrative remedies is "within the discretion of the trial court." *Powell v. AT&T Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991). There are sound policy reasons for mandating that a plaintiff pursue all appeals within an administrative system. It "minimize[s] the number of frivolous lawsuits; promote[s] consistent treatment of claims; provide[s] a nonadversarial dispute resolution process; and decrease[s] the cost and time of claims settlement." *Id.*

Claimants may be excused from the exhaustion requirement for two reasons: first if they "lack of meaningful access to review procedures;" and second if pursuing "internal remedies would be futile." *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729 (7th Cir. 2007) (internal quotation marks omitted).

Defendant argues that Plaintiff failed to exhaust his administrative remedies by filing an untimely second appeal. Plaintiff makes three arguments in response.

First, Plaintiff argues that the second level of appeal is not "mandatory" and he actually exhausted all required administrative remedies by filing the first appeal. He points to language in the Plan which states that a claimant "may file a second-level appeal . . . within 60 days." (DE 24-2 at 123.)

Plaintiff's reading of the Plan's language leads to contradictory results. In describing the first level of appeal, the Plan uses the same discretionary language, which states "[t]he claimant *may* request a review of an adverse benefit determination." (*Id.* at 122.) Either both levels of appeal are optional, or both are mandatory. The Plan itself answers this question by specifically requiring the "exhaustion of remedies" prior to filing suit. (*Id.* at 123.) Thus, Plaintiff had to file two timely appeals before bringing his action into federal court.

Second, Plaintiff argues that his appeal was actually a request for "reconsideration of benefits." There are two major problems with this argument. First, nothing in the Plan distinguishes between a request for "reconsideration of benefits" and an appeal. Second, if Plaintiff did not file a second appeal, then he did not exhaust all administrative remedies.

Third, Plaintiff argues that Defendant waived any timeliness defense by considering his appeal on the merits. He argues that Defendant should have rejected the appeal as untimely in order to preserve the exhaustion of remedies defense. But Defendant in this case did explicitly reject the second appeal as untimely. The denial letter stated, "your second-level appeal has exceeded the 60-day time limit." (*Id.* at 217.)

Plaintiff makes no other arguments as to why he should be excused from the exhaustion of remedies requirement. Therefore, the Court will apply the rule to this case, a rule Plaintiff clearly failed to meet.

**(2)** ***The Decision of the Plan Administrator***

Even if Plaintiff had filed his second appeal in a timely fashion, his arguments on the merits fail to pass summary judgment review. Plaintiff makes two arguments on the merits. First he argues that the Plan specifically excludes motorcycles from the "illegal acts" provision. Second,

he argues that he did not commit an illegal act because the prosecutor dropped all charges against him. The Court disagrees.

The "illegal acts exclusion" prohibits coverage for all illegal acts. (DE 24-2 at 83). The provision includes a list of examples of illegal acts the policy will not cover. One example is operating a Motor Vehicle while intoxicated. The Plan's authors did not intend this list to be exhaustive because they qualified it with the words "including, but not limited to." 5-24 *Corbin on Contracts*, § 24.28 ("there is a strong likelihood that the parties intended that the general classification include not only items resembling those enumerated, but also items of other sorts [if the phrase, "including, but not limited to" is used].")

Second, nothing requires the Administrator to wait for a prosecutor to press charges, or a court to convict an insured for an illegal act before denying benefits. In *Tourdot v. Rockford Health Plans, Inc.*, the Court of Appeals for the Seventh Circuit found that the insured's claim was properly denied because a breathalyzer showed that he had been driving over the legal limit. 439 F.3d 351, 354 (7th Cir. 2006). Even though the driver was not ticketed for his actions, he still violated the law, allowing the administrator to deny him benefits. *Id*. Therefore, in this case, the Administrator properly relied on the blood draw evidence, which showed that Plaintiff violated the law. Nothing else indicates that the Administrator's decision was arbitrary or capricious.

**D. CONCLUSION**

The Court grants Defendants' Motion for Summary Judgment. The Court dismisses Plaintiff's Motion for Summary Judgment.

**SO ORDERED** on July 24, 2013.

                  s/ JOSEPH S. VAN BOKKELEN
                  JOSEPH S. VAN BOKKELEN
                  UNITED STATES DISTRICT JUDGE